No. 24-1886

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

KIMBERLY LAFAVE, et al.,
PLAINTIFFS-APPELLANTS,

v.

THE COUNTY OF FAIRFAX, VIRGINIA, et al.,
DEFENDANTS-APPELLEES.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
No. 1:23-cv-1605

**BRIEF FOR THE DISTRICT OF COLUMBIA, ILLINOIS, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, HAWAII, MASSACHUSETTS, MINNESOTA, NEVADA, NEW JERSEY, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, AND WASHINGTON AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE**

BRIAN L. SCHWALB
District of Columbia Attorney General

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

ANNE A. DENG
Assistant Attorney General

Office of the Attorney General for the
District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

KWAME RAOUL
Illinois Attorney General

JANE ELINOR NOTZ
Solicitor General

SARAH A. HUNGER
Deputy Solicitor General

Office of the Attorney General for
the State of Illinois
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202
sarah.hunger@ilag.gov

## TABLE OF CONTENTS

INTRODUCTION AND INTEREST OF AMICI CURIAE .....................................1

SUMMARY OF ARGUMENT ..................................................................................2

ARGUMENT .................................................................................................................3

I.    The Second Amendment Allows States And Localities To Implement Reasonable Firearm Regulations To Promote Gun Safety And Protect Against Gun Violence ...........................................................................3

II.    Consistent With Regulations Adopted By Other States, Fairfax County's Designation Of "Sensitive Places" Protects Uniquely Vulnerable Locations And Populations ..........................................................8

        A.    Firearms pose special risks in crowded gathering spots ......................9

        B.    Restricting firearms in sensitive places protects vulnerable populations ...........................................................................13

        C.    Sensitive-place designations help to protect the exercise of other constitutional rights .............................................................15

CONCLUSION .........................................................................................................188

# TABLE OF AUTHORITIES

## *Cases*

*Antonyuk v. James,*
　120 F.4th 941 (2d Cir. 2024) ......................................................... 9, 13

*Bianchi v. Brown,*
　111 F.4th 438 (4th Cir. 2024) ............................................................. 7

*DiGiacinto v. Rector & Visitors of George Mason Univ.,*
　704 S.E.2d 365 (Va. 2011) ................................................................ 13

*District of Columbia v. Heller,*
　554 U.S. 570 (2008)................................................... 1, 3, 4, 5, 6, 8, 15

*McDonald v. City of Chicago,*
　561 U.S. 742 (2010)............................................................... 3, 4, 5, 6

*Medtronic Inc. v. Lohr,*
　518 U.S. 470 (1996)................................................................................ 4

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
　142 S. Ct. 2111 (2022).............................................. 1, 3, 5, 6, 7, 8, 15

*United States v. Class,*
　930 F.3d 460 (D.C. Cir. 2019)..................................................... 8, 13

*United States v. Morrison,*
　529 U.S. 598 (2000)............................................................................. 4

*United States v. Rahimi,*
　144 S. Ct. 1889 (2024).................................................................. 3, 6, 7

*Voisine v. United States,*
　579 U.S. 686 (2016)............................................................................ 8

*Statutes and Regulations*

Ala. Code § 13A-11-59 ................................................................. 17

Ala. Code § 13A-11-61.2 .............................................................. 12

Ark. Code Ann. § 5-73-122 .......................................................... 14

Cal. Penal Code § 26230 .............................................................. 12

Colo. Rev. Stat. § 18-9-118 .......................................................... 12

D.C. Code § 7-2509.07 ........................................................... 12, 17

D.C. Code § 22-4502.01 .......................................................... 14, 17

Ga. Code Ann. § 16-11-127.1 ....................................................... 14

Haw. Rev. Stat. § 134-9.1 ............................................................ 12

80 Ind. Admin. Code 11-2-2 ......................................................... 12

430 Ill. Comp. Stat. 66/65 ...................................................... 12, 14

La. Rev. Stat. § 40:1379.3 ........................................................... 12

Mich. Comp. Laws Ann. § 28.425o ................................................ 14

Minn. Stat. § 97A.091 ................................................................. 12

Mo. Rev. Stat. § 571.107 ............................................................. 14

Mont. Code § 87-5-401 ............................................................... 12

N.C. Gen Stat. § 14-277.2 ............................................................ 12

N.D. Cent. Code § 62.1-02-05 ...................................................... 14

N.J. Stat. Ann. § 2C:58-4.6 .......................................................... 17

N.M. Stat. Ann. § 29-19-8 ........................................................... 14

N.Y. Penal Law § 265.01-e ........................................................ 12, 14, 15

Neb. Rev. Stat. § 28-1202.01 ........................................................ 15

18 Pa. Cons. Stat. Ann. § 912 ........................................................ 14

S.C. Code Ann. § 16-23-20 ........................................................ 14

Tex. Penal Code § 46.03 ........................................................ 12, 14, 17

Va. Code. Ann. § 18.2-283.2 ........................................................ 17

13 Vt. Stat. Ann. § 4023 ........................................................ 14

W. Va. Code Ann. § 61-7-11a ........................................................ 14

Wash. Rev. Code Ann. § 9.41.300 ........................................................ 15, 17

Wyo. Stat. Ann. § 6-8-104(t)(ix) ........................................................ 14

### Other

Angela Woolsey, *Fairfax County students call for end to gun violence*,
Fairfax County Times (Mar. 16, 2018) ........................................................ 15

Brad J. Bushman, *Guns Automatically Prime Aggressive Thoughts,
Regardless of Whether a "Good Guy" or "Bad Guy" Holds the Gun*, 9
Soc. Psych. & Personality Sci. 727 (2018) ........................................................ 11

*Brooklyn Subway Shooting: Police Search for Gunman in Attack on
Brooklyn Subway*, N.Y. Times (Apr. 15, 2022) ........................................................ 10

*Bruen and the Future of the Sensitive Places Doctrine: Rejecting the
Ahistorical Government Security Approach*,
63 B.C. L. Rev. E. Supp. I.-60 (2022) ........................................................ 9

Carlie Porterfield, *10 Injured in Stampede at New York's Barclays Center
Amid Shooting Scare, Police Say*, Forbes (May 29, 2022) ........................................................ 10

David Hemenway et al., *Gun Use in the United States: Results from Two
National Surveys*, 6 Injury Prevention 263 (2000) ........................................................ 10

iv

Fairfax Cnty. Park Auth., *Alcohol Policy – Parks and Facility Listing* (Feb. 17, 2023 update) ........................................................................ 10

Fairfax Cnty. Park Auth., *Policy Manual* 134, (Feb. 22, 2023) ............................ 15

*Glasgow Park Closed Due to Thursday Morning Shooting*, First State Update (Jun. 15, 2023) ........................................................................ 11

*Gun Violence Exposure and Posttraumatic Symptoms Among Children and Youth*, 32 J. Traumatic Stress 881 (2019) ........................................................ 13

Joseph Blocher & Reva B. Siegel, *When Guns Threaten the Public Sphere: A New Account of Public Safety Regulation Under Heller*, 116 Nw. U. L. Rev. 139 (2021) .................................................... 11, 16

Larry Buchanan et al., *Who Stops a 'Bad Guy With a Gun'?*, N.Y. Times (Jun. 22, 2022) ........................................................................ 17

Lauren DiSanto, *Teen Bystander Dies After Philadelphia Playground Shooting*, NBC News (Apr. 12, 2013) .............................................................. 10

*Law Enforcement Officers Killed and Assaulted*, FBI, (tbl. 33, "Law Enforcement Officers Feloniously Killed, 2010-2019") .................................... 16

R. K. Campbell, *Dialing Long Distance*, Police Mag. (Oct. 31, 2003) .................. 16

*The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 205 (2018) ................................................ 8

*When Guns Threaten the Public Sphere: A New Account of Public Safety Regulation Under Heller*, 116 Nw. U. L. Rev. 139 (2021) .............................. 11

## INTRODUCTION AND INTEREST OF AMICI CURIAE

Amici the District of Columbia, Illinois, California, Colorado, Connecticut, Delaware, Hawaii, Massachusetts, Minnesota, Nevada, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington (collectively, "Amici States") submit this brief in support of defendants-appellees under Federal Rule of Appellate Procedure 29(a)(2).

Amici States have a responsibility to ensure the health, safety, and welfare of their communities. That responsibility includes protecting their residents from the harmful effects of gun violence and promoting the safe use of firearms. Amici States have historically fulfilled this responsibility by implementing reasonable measures to regulate firearms, including by imposing location-based restrictions on carrying guns. Such regulation does not conflict with the Second Amendment. As the Supreme Court has consistently recognized, the Second Amendment does not encompass the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2128 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008)), but rather leaves states and localities with the flexibility they need to protect their communities.

Indeed, the Second Amendment "leaves [jurisdictions with] a variety of tools for combating [the] problem" of gun violence. *Heller*, 554 U.S. at 636. This

flexibility is an essential element of our federalist system, and it ensures that firearm regulations appropriately and effectively address the specific concerns in each locality. Although Amici States have taken different approaches to regulating firearms, they share an interest in addressing gun violence in ways that are tailored to the needs of their residents. Amici States seek to maintain their authority to address firearm-related issues through legislation that is consistent with historical tradition and responsive to the unique circumstances in their communities.

## SUMMARY OF ARGUMENT

In September 2020, Fairfax County adopted an Ordinance that prohibits the possession of firearms in "any public park owned or operated by the County," Fairfax Cnty. Code § 6-2-1(A)(2), and in any public place that "is being used by or is adjacent to a County-permitted event or an event that would otherwise require a County permit," *id.* § 6-2-1(A)(4). In November 2023, plaintiffs filed suit in district court challenging the constitutionality of the Ordinance and seeking injunctive relief. The district court denied plaintiffs' request for an injunction and granted summary judgment for defendants, finding in relevant part that Fairfax County "met [its] burden of showing the Ordinance's congruity with this Nation's history and tradition of regulating firearms" by "[c]iting over 116 prohibitions on guns in parks from 1858 to 1936." Joint Appendix ("J.A.") 1777; *see also* J.A. 1788 (noting that "the parties effectively incorporate and adopt their [permitted-events restriction] arguments from

the Parks Restriction," and finding the analysis "relevantly similar"). Plaintiffs appealed.

Amici States agree with Fairfax County that the challenged provisions do not violate the Second Amendment because they fit squarely within a long tradition of constitutionally acceptable regulations that states and localities have adopted to protect their residents. The sensitive places at issue in this case—parks and permitted events—are consistent with the types of locations that other states and localities have designated as sensitive: designations that limit firearm possession in crowded places, around vulnerable populations, and where individuals are exercising other constitutionally protected rights. As in other jurisdictions, Fairfax County's sensitive-place designations protect the public from the heightened risk of gun violence in such locations.

## ARGUMENT

## I.   The Second Amendment Allows States And Localities To Implement Reasonable Firearm Regulations To Promote Gun Safety And Protect Against Gun Violence.

Since the Founding, states and localities have enacted restrictions on who may bear arms, where arms may be brought, and the manner in which arms may be carried. *See United States v. Rahimi*, 144 S. Ct. 1889, 1899-901 (2024); *Bruen*, 142 S. Ct. at 2145; *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010); *Heller*, 554

U.S. at 626-27. The Ordinance is one in a long line of state and local regulations designed to make gun possession and use safer for the public.

States and their subdivisions have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Medtronic Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (internal quotation marks omitted). Localities also wield police power to various degrees, often by delegation. *See, e.g.*, *McDonald*, 561 U.S. at 922 (2010) (Breyer, J., dissenting) (describing municipal regulation of private guns as the "quintessential exercise" of a state's police power). Enacting measures to promote public safety—particularly those that are tailored to local circumstances—falls squarely within the reasonable exercise of state and local police powers. Indeed, there is "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *United States v. Morrison*, 529 U.S. 598, 618 (2000).

The Supreme Court has repeatedly affirmed state and local authority in this area, even as it has defined the scope and import of the rights conferred by the Second Amendment. In each of its major Second Amendment opinions—*Heller*, *McDonald*, *Bruen*, and *Rahimi*—the Court expressly acknowledged the important role states and local governments play in setting their own policies to minimize the risk of gun violence, consistent with our Nation's historical tradition.

4

In *Heller*, the Court made clear that the right to keep and bear arms is "not unlimited." 554 U.S. at 626. Although states may not ban the possession of handguns by responsible, law-abiding individuals or impose similarly severe burdens, they still possess "a variety of tools" to combat the problem of gun violence in a way that is responsive to the needs of their communities. *Id.* at 636. States may, for example, implement measures prohibiting certain groups of people from possessing firearms, and they may "forbid[] the carrying of firearms in sensitive places such as schools and government buildings." *Id.* at 626-27.

The Court reiterated this point in *McDonald*, emphasizing that the Second Amendment "by no means eliminates" a state's "ability to devise solutions to social problems that suit local needs and values." 561 U.S. at 785; *see id.* at 802 (Scalia, J., concurring) ("No fundamental right—not even the First Amendment—is absolute."). Recognizing that "conditions and problems differ from locality to locality," *id.* at 783, the Court made clear that "state and local experimentation with reasonable firearms regulations" could and should continue "under the Second Amendment," *id*. at 785 (brackets and internal quotation marks omitted).

*Bruen* confirmed these principles. There, the Court explicitly stated that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality" of provisions "designed to ensure only that those bearing arms . . . are, in fact, 'law-abiding, responsible citizens.'" 142 S. Ct. at 2138 n.9 (quoting *Heller*, 554 U.S. at

635).  And, building on *Heller*, the Court "assume[d] it settled" that prohibiting firearms in sensitive locations—including "schools and government buildings," "legislative assemblies, polling places, and courthouses," and "new and analogous sensitive places"—is constitutional.  *Id*. at 2133 (emphasis omitted).

Most recently, in *Rahimi*, the Court again explained that "the right secured by the Second Amendment is not unlimited" and should not be understood to protect the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  144 S. Ct. at 1897 (quoting *Heller*, 554 U.S. at 626-27). Indeed, the Court elaborated, "[a]t the founding, the bearing of arms was subject to regulations ranging from rules about firearm storage to restrictions on gun use by drunken New Year's Eve revelers" to "ban[s] [on] the carrying of dangerous and unusual weapons . . . [and] concealed firearms."  *Id.* at 1889 (internal quotation marks omitted).

These decisions make clear that states retain the power to enact laws to protect their residents and that those laws need not be uniform: states are free to select "solutions to social problems that suit local needs and values," ensuring that firearm regulations appropriately and effectively address the specific circumstances in each state.  *McDonald*, 561 U.S. at 785.  As the Court emphasized in *Bruen*, the Second Amendment is not a "regulatory straightjacket."  142 S. Ct. at 2133.  Rather, states are permitted to enact a wide range of firearm regulations.  *See id.* at 2162

(Kavanaugh, J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations." (quoting *Heller*, 554 U.S. at 636)).

Nor are states limited to precisely the same laws that were enacted in the past. *See Rahimi*, 144 S. Ct. at 1897 (Court's "precedents were not meant to suggest a law trapped in amber.").  Thus, in *Bruen*, the Court instructed courts to "use analogies" to long-recognized sensitive places—such as schools and government buildings—to "determine [whether] modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." *Bruen*, 142 S. Ct. at 2133-34 (emphasis omitted); *see Rahimi*, 144 S. Ct. at 1926 (Barrett, J., concurring) (describing "the 'sensitive places' principle that limits the right to public carry" as a principle from which states and courts could analogize).  And in *Rahimi*, the Court reiterated that *Bruen* does not mandate a "historical twin," 144 S. Ct. at 1903, but instead requires courts to "ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit," *id.* at 1898.

In short, "[t]he [Second] Amendment has not disabled the ability of representative democracy to respond to an urgent public safety crisis." *Bianchi v. Brown*, 111 F.4th 438, 472 (4th Cir. 2024) (en banc).  States retain not only the freedom, but also the fundamental responsibility, to implement reasonable measures designed to respond to the needs of their communities and to protect their residents from the harms associated with gun violence.

## II. Consistent With Regulations Adopted By Other States, Fairfax County's Designation Of "Sensitive Places" Protects Uniquely Vulnerable Locations And Populations.

As the Supreme Court has consistently recognized, the right to "bear" firearms in public has long been understood to permit restrictions on bearing arms in "sensitive places." *Heller*, 554 U.S. at 626; *see Bruen*, 142 S. Ct. at 2133 (reaffirming that in sensitive places, "arms carrying [can] be prohibited consistent with the Second Amendment"). Because people "can preserve an undiminished right of self-defense by not entering [such] places" or by "taking an alternate route," *United States v. Class*, 930 F.3d 460, 465-66 (D.C. Cir. 2019) (internal quotation marks omitted), laws restricting firearms in places identified as sensitive "neither prohibit nor broadly frustrate any individual from generally exercising his right to bear arms," *Voisine v. United States*, 579 U.S. 686, 714 (2016) (Thomas, J., dissenting). "[S]ensitive places" thus are "in effect exempt . . . from the Second Amendment." *Bruen*, 142 S. Ct. at 2133-34; *see* David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 205, 215 (2018) ("[T]he sensitive places doctrine is an exception to the general right to bear arms.").

Fairfax County's designation of public parks and areas used by or adjacent to permitted events as sensitive places is a reasonable and appropriate response to the heightened risk associated with the presence of firearms in such locations.

8

Specifically, like other sensitive-place designations, the challenged provisions seek to prevent gun violence in particularly crowded or volatile places, around vulnerable populations, or where individuals are exercising other constitutionally protected rights.

### A.    Firearms pose special risks in crowded gathering spots.

To start, states and localities frequently restrict the use of firearms in certain dangerous places where volatile conditions create special risks to health and safety. Designating areas as sensitive places helps to preserve order and diminish the risk of panic in gathering locations and other crowded spaces.  *See* Carina Bentata Gryting & Mark Frassetto, NYRSPA v. Bruen *and the Future of the Sensitive Places Doctrine: Rejecting the Ahistorical Government Security Approach*, 63 B.C. L. Rev. E. Supp. I.-60, I.-68 (2022) ("The number of potential targets . . . and the increased risk of conflict all seem to be relevant in the historical determination that an area constitutes a sensitive place."); *see also Antonyuk v. James*, 120 F.4th 941, 1027 (2d Cir. 2024) (2d Cir. 2024) (finding that "a high population density in discrete, confined spaces, such as quintessential public squares, has historically justified firearm restrictions").  Governments may therefore choose to restrict the use of firearms in places where the presence of large numbers of people creates risks to health and safety, such as (as Fairfax County has done) in parks or around large events.  Indeed, the parks covered by the Ordinance host myriad gatherings,

including athletic competitions, summer camps, fairs, holidays events, fundraisers, protests, and election-related activities.  *See* J.A. 1557-58.

In such busy locations, firearm use is likely to end in tragedy—not only for the innocent bystanders who may be shot, but also for others who may be injured attempting to escape alongside a panicked crowd.  *See, e.g.*, Lauren DiSanto, *Teen Bystander Dies After Philadelphia Playground Shooting*, NBC News (Apr. 12, 2013), http://tinyurl.com/2p2xpvxk; *Brooklyn Subway Shooting: Police Search for Gunman in Attack on Brooklyn Subway*, N.Y. Times (Apr. 15, 2022) (10 shot and another 13 injured from smoke inhalation, falls, or panic attacks), http://tinyurl.com/4tdteru9; Carlie Porterfield, *10 Injured in Stampede at New York's Barclays Center Amid Shooting Scare, Police Say*, Forbes (May 29, 2022), https://tinyurl.com/2xeuc7fj.

These dangers are heightened in locations where crowds can become volatile because of the presence of alcohol.  *See* Fairfax Cnty. Park Auth., *Alcohol Policy – Parks and Facility Listing* (Feb. 17, 2023 update), https://tinyurl.com/48abn9r8 (allowing alcohol in certain park areas).   When individuals consume alcohol— which impairs both judgment and dexterity—the risk of either accidental or intentional use of firearms increases. *See* David Hemenway et al., *Gun Use in the United States: Results from Two National Surveys*, 6 Injury Prevention 263, 266 (2000), https://tinyurl.com/55yf7d3m ("Regular citizens with guns, who are

sometimes tired, angry, drunk or afraid, and who are not trained in dispute resolution or when it is proper to use a firearm, have many opportunities for inappropriate gun use."). Further, given the "weapons effect," wherein the presence of a weapon primes individuals to think and act more aggressively, allowing firearms in these spaces may invite violence. *See* Brad J. Bushman, *Guns Automatically Prime Aggressive Thoughts, Regardless of Whether a "Good Guy" or "Bad Guy" Holds the Gun*, 9 Soc. Psych. & Personality Sci. 727, 730-31 (2018), https://tinyurl.com/34cnpvmd.

Firearms can also inhibit the safe and effective operation of locations where large numbers of people gather, like the parks and permitted events subject to Fairfax County's Ordinance. The discharge of a firearm in or near a park or permitted event may cause a disruptive and inconvenient shut-down. *See, e.g.*, *Glasgow Park Closed Due to Thursday Morning Shooting*, First State Update (Jun. 15, 2023), http://tinyurl.com/mrxw7nbh. And even the perceived risk of gun violence can undermine the operation of these locations because individuals may be discouraged from visiting them when they know that others may be armed. *See* Joseph Blocher & Reva B. Siegel, *When Guns Threaten the Public Sphere: A New Account of Public Safety Regulation Under* Heller, 116 Nw. U. L. Rev. 139, 141 (2021) ("Gun laws protect people's freedom and confidence to participate in every domain of our shared life, from attending school to shopping, going to concerts, gathering for prayer,

voting, assembling in peaceable debate, counting electoral votes, and participating in the inauguration of a President.").

Recognizing these dangers, many states and localities have similarly chosen to restrict carrying firearms in crowded places. Some limit firearms in public or state parks. *See, e.g.*, Cal. Penal Code § 26230(a)(12); 430 Ill. Comp. Stat. 66/65(a)(13); Minn. Stat. § 97A.091, subd.1(1); Mont. Code § 87-5-401(1); N.Y. Penal Law § 265.01-e(2)(d). Others limit open or concealed carry of firearms in public-transit facilities or vehicles, which are often crowded and so present the same risks. *See* Colo. Rev. Stat. § 18-9-118; D.C. Code § 7-2509.07(a)(6); Haw. Rev. Stat. § 134-9.1(a)(13); N.Y. Penal Law § 265.01-e(2)(n). Still others limit firearms at locations like stadiums, fairgrounds, and parade routes that host large gatherings and events. *See, e.g.*, Ala. Code § 13A-11-61.2(a)(5), (6) (school and professional athletic events); 80 Ind. Admin. Code 11-2-2(b) (fairgrounds); La. Rev. Stat. § 40:1379.3(N)(9) (parades); N.C. Gen Stat. § 14-277.2(a) (parades, picket lines, funeral processions); Tex. Penal Code § 46.03(a)(4), (13) (racetracks and amusement parks). By taking steps to prevent the unique dangers of firearm violence in crowded gathering spots, these laws help to support the inclusion and participation of all members of the public in community events.

**B.      Restricting firearms in sensitive places protects vulnerable populations.**

Fairfax County's restrictions on carrying firearms in parks—which includes playgrounds, J.A. 1556, and preschools, J.A. 1559—also help to protect the particularly vulnerable populations that frequent these locations, such as children and their caregivers, elderly individuals, and persons with disabilities. Such individuals cannot easily defend themselves or escape a violent attack, should one occur. And even if they are not physically harmed by firearms, exposure to such violence can cause psychological harm. *See* Heather A. Turner et al., *Gun Violence Exposure and Posttraumatic Symptoms Among Children and Youth*, 32 J. Traumatic Stress 881, 888 (2019), https://tinyurl.com/2vwsed8n (indirect exposure to gun violence, including witnessing violence or hearing gunshots, can be traumatic to children).

Both federal and state courts have recognized that the regular presence of vulnerable people (such as children, the sick, and the elderly) in a particular location is a strong indication that it is properly deemed sensitive for Second Amendment purposes. *See, e.g.*, *Antonyuk*, 120 F.4th at 1012 (finding historical "tradition of prohibiting firearms in locations where vulnerable populations congregate"); *Class*, 930 F.3d at 465 (places are designated as sensitive "because of the people found there" (internal quotation marks omitted)); *DiGiacinto v. Rector & Visitors of George Mason Univ.*, 704 S.E.2d 365, 370 (Va. 2011) ("GMU is a 'sensitive place'"

13

because it "is a school" with many students "under the age of 18," including "elementary and high school students" in the summer).

Indeed, many states and localities, like Fairfax County, exclude firearms from places that welcome vulnerable segments of the population. For instance, some states similarly prohibit firearms at playgrounds or youth centers. *See, e.g.*, 430 Ill. Comp. Stat. 66/65(a)(12); N.Y. Penal Law § 265.01-e(2)(d). Other states bar firearms in and around schools, *see, e.g.*, Ark. Code Ann. §§ 5-73-122(a)(3)(D)(ii); D.C. Code § 22-4502.01(a); 18 Pa. Cons. Stat. Ann. § 912(b); Wyo. Stat. Ann. § 6-8-104(t)(ix), and at school functions, *see, e.g.*, Ga. Code Ann. § 16-11-127.1(b)(1); N.D. Cent. Code § 62.1-02-05(1)(a); W. Va. Code Ann. § 61-7-11a(b)(1)(C). States also prohibit weapons in daycare centers and preschools. *See, e.g.*, Mich. Comp. Laws Ann. § 28.425o(1)(b); N.M. Stat. Ann. § 29-19-8(C); N.Y. Penal Law § 265.01-e(2)(e)-(f); S.C. Code Ann. § 16-23-20(A)(6). Additionally, many states prohibit firearms at hospitals, in nursing homes, or in other healthcare facilities. *See, e.g.*, 430 Ill. Comp. Stat. 66/65(a)(7); Mo. Rev. Stat. § 571.107(17); N.Y. Penal Law § 265.01-e(2)(b); Tex. Penal Code § 46.03(a)(11); 13 Vt. Stat. Ann. § 4023(a). Like Fairfax County, these jurisdictions have acted to protect vulnerable populations by designating the spaces where they congregate as sensitive places where carrying firearms is prohibited.

14

**C.    Sensitive-place designations help to protect the exercise of other constitutional rights.**

States and localities also frequently designate locations as sensitive places to protect the exercise of other constitutional rights. The Supreme Court has recognized that areas in which constitutionally protected activities occur—such as courthouses, polling places, and legislative assemblies—are quintessential examples of sensitive places. *See Bruen*, 142 S. Ct. at 2133; *Heller*, 554 U.S. at 626-27. The Ordinance's ban on firearms at parks and around permitted events is no different. Firearms may be prohibited in these locations because of the risk that violence could threaten key government functions.

Thus, states have designated as sensitive places events involving political speech, like rallies and protests. *See, e.g.*, Neb. Rev. Stat. § 28-1202.01(3); N.Y. Penal Law § 265.01-e(2)(s); Wash. Rev. Code Ann. § 9.41.300(2). The same reasoning applies to areas like public parks, in which individuals may engage in protected speech and political activity. *See* Angela Woolsey, *Fairfax County students call for end to gun violence*, Fairfax County Times (Mar. 16, 2018), https://tinyurl.com/24btcfes (reporting that "[s]tudents from . . . schools around Fairfax County gathered at Lewinsville Park in McLean . . . to protest gun violence"); Fairfax Cnty. Park Auth., *Policy Manual* 134, (Feb. 22, 2023), https://tinyurl.com/yyj8u6kx (allowing public gatherings—defined to include demonstrations, picketing, speeches, parades, and rallies—of 75 persons or fewer

15

without a permit, and requiring express written permission from the park authority for public gatherings of more than 75 persons).  Not only are these locations often targets of violence, but the mere presence of firearms and the implicit threat they communicate could chill individuals' peaceful exercise of their speech rights.  *See* Blocher & Siegel, *supra* at 141.

Furthermore, creating a buffer zone around sensitive places—such as the Ordinance's restriction on carrying firearms in areas that are "adjacent to" permitted events or events that should be permitted, Fairfax County Code § 6-2-1(A)(4)—is a sensible policy choice designed to ensure the safety and security of these locations. As a basic principle, increasing the distance between an individual with a firearm and a potential victim makes good sense because, for most individuals, long-distance shooting is both more difficult and less effective.  *See, e.g.*, R. K. Campbell, *Dialing Long Distance*, Police Mag. (Oct. 31, 2003), https://tinyurl.com/2p9vmpkj ("[M]ost officers believe that shooting a pistol beyond 25 yards is futile.").  Indeed, in 2019, over 90% of police officers killed by firearms were shot from a range less than 50 yards.  *Law Enforcement Officers Killed and Assaulted*, FBI, https://tinyurl.com/mr22mszd (tbl. 33, "Law Enforcement Officers Feloniously Killed, 2010-2019") (last visited Dec. 23, 2024).  But beyond simply increasing the difficulty of aiming a firearm, buffer zones serve an additional, critical purpose: they empower law enforcement to intercept armed individuals *before* they reach a

sensitive place.  By the time an active shooter is at a sensitive location, it is often too late for law enforcement to prevent the attack.  Larry Buchanan *et al.*, *Who Stops a 'Bad Guy With a Gun'?*, N.Y. Times (Jun. 22, 2022), https://tinyurl.com/4n7r8ys7 (reporting several cases in which an attacker shot dozens of individuals in the 30 seconds to a couple of minutes that it took for law enforcement to respond).  Robust buffer zones thus provide law enforcement the time and space they need to stop armed individuals before they reach their intended victims.  Accordingly, many jurisdictions have instituted buffer zones around sensitive places.[1]

In sum, Fairfax County's Ordinance prohibiting firearms in parks and in areas used by or adjacent to permitted events fits comfortably within both the longstanding practice of other states and the bounds of the Second Amendment.

---

[1]    *See, e.g.*, Ala. Code § 13A-11-59(c) (restricting firearms "within 1,000 feet of a demonstration at a public place"); D.C. Code § 7-2509.07(14) (1,000-foot buffer around demonstrations); N.J. Stat. Ann. § 2C:58-4.6(a)(6) (100-foot buffer around demonstrations); Wash. Rev. Code Ann. § 9.41.300(2)(b) (250-foot buffer around demonstrations); D.C. Code § 22-4502.01(a) (1,000-foot buffer around schools); Tex. Penal Code § 46.03(a)(6) (1,000-foot buffer around places of execution); Va. Code. Ann. § 18.2-283.2 (restricting carry in the entire "Capitol Square" area, including "sidewalks . . . extending from 50 feet" from government-building entrances).

## CONCLUSION

The Court should affirm the decision below.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for
the District of Columbia

/s/ Caroline S. Van Zile
CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

ANNE A. DENG
Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
for the District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

December 2024

KWAME RAOUL
Attorney General for
the State of Illinois

JANE ELINOR NOTZ
Solicitor General

SARAH A. HUNGER
Deputy Solicitor General

Office of the Attorney General
for the State of Illinois
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202
sarah.hunger@ilag.gov

ROB BONTA
*Attorney General*
State of California

PHILIP J. WEISER
*Attorney General*
State of Colorado

WILLIAM TONG
*Attorney General*
State of Connecticut

KATHLEEN JENNINGS
*Attorney General*
State of Delaware

ANNE E. LOPEZ
*Attorney General*
State of Hawaii

ANDREA CAMPBELL
*Attorney General*
Commonwealth of Massachusetts

KEITH ELLISON
*Attorney General*
State of Minnesota

AARON D. FORD
*Attorney General*
State of Nevada

MATTHEW J. PLATKIN
*Attorney General*
State of New Jersey

LETITIA JAMES
*Attorney General*
State of New York

ELLEN F. ROSENBLUM
*Attorney General*
State of Oregon

MICHELLE A. HENRY
*Attorney General*
Commonwealth of Pennsylvania

PETER F. NERONHA
*Attorney General*
State of Rhode Island

CHARITY R. CLARK
*Attorney General*
State of Vermont

ROBERT W. FERGUSON
*Attorney General*
State of Washington

## CERTIFICATE OF COMPLIANCE

I certify that:

1. This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) because the brief contains 3,896 words, excluding exempted parts.

2. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Caroline S. Van Zile
CAROLINE S. VAN ZILE

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on December 23, 2024, an electronic copy of the foregoing was filed with the Clerk of Court using the ECF system and thereby served upon all counsel appearing in this case.

/s/ Caroline S. Van Zile

CAROLINE S. VAN ZILE

21