No. 24-1886

---

In The

# United States Court of Appeals

### For the Fourth Circuit

**KIMBERLY LAFAVE, GLENN M. TAUBMAN, ROBERT HOLZHAUER,**

**Plaintiffs-Appellants,**

**v.**

**THE COUNTY OF FAIRFAX, VIRGINIA, AND KEVIN DAVIS, IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE,**

**Defendants-Appellees.**

---

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Case No. 1:23-cv-1605 (WBP)
Honorable William B. Porter

**BRIEF OF *AMICI CURIAE* BRADY CENTER TO PREVENT GUN VIOLENCE AND GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE IN SUPPORT OF APPELLEES AND AFFIRMANCE**

George J. Hazel
*Counsel of Record*
Hayley N. Lawrence
GIBSON, DUNN & CRUTCHER LLP
1700 M St., N.W.
Washington, D.C. 20036
(202) 955-8500

Seton H. O'Brien
Jamie Miller
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

Caelin Moriarity Miltko
GIBSON, DUNN & CRUTCHER LLP
1801 California St., Suite 4200
Denver, CO 80202
(303) 298-5936

Marie C. Baldwin
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Ave., Suite 2100
Dallas, TX 75201
(214) 698-3100


*Counsel for Amici Curiae*

Douglas N. Letter
Shira Lauren Feldman
BRADY CENTER TO PREVENT GUN
VIOLENCE
840 First St., NE Suite 400
Washington, D.C. 20002
(202) 370-8100

Esther Sanchez-Gomez
Billy Clark
GIFFORDS LAW CENTER TO PREVENT
GUN VIOLENCE
268 Bush St., #555
San Francisco, CA 94104
(415) 433-2062

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1886        Caption: Kimberly Lafave et al. v. County of Fairfax, Virginia et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Giffords Law Center to Prevent Gun Violence, Brady Center to Prevent Gun Violence
(name of party/amicus)

_____

 who is _____ Amici _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                                        ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                                              ☐ YES ☑ NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ George J. Hazel                    Date: 12/23/24

Counsel for: Amici

Print to PDF for Filing     Reset Form

- 2 -

# TABLE OF CONTENTS

Page

STATEMENT OF INTEREST OF *AMICI* ............................................................... 1

INTRODUCTION ............................................................................................ 3

ARGUMENT .................................................................................................... 4

I.     Plaintiffs' Facial Challenge To The Events Restriction Fails Because Certain County-Permitted Events Are Clearly Sensitive Places. ................................................................................ 4

II.     In Any Event, The Second Amendment Cannot Override First Amendment Rights ........................................................................ 9

      A.     Fairfax County Regularly Issues Event Permits For First Amendment Activities ...................................................... 10

      B.     Firearms Disrupt And Deter Peaceful Public Assembly, Chilling First Amendment Rights. ...................................... 13

III.     The Events Restriction Protects Public Safety. ................................ 16

CONCLUSION ................................................................................................ 20

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Antonyuk v. James,*
  120 F.4th 941 (2d Cir. 2024) ...................................................................7, 8

*De Jonge v. State of Oregon,*
  299 U.S. 353 (1937) ..................................................................................9

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) .................................................................6, 8, 9, 12

*Frey v. Nigrelli,*
  661 F. Supp. 3d 176 (S.D.N.Y. 2023) .....................................................7, 8

*Hicks v. Ferreyra,*
  965 F.3d 302 (4th Cir. 2020) ....................................................................5

*Md. Shall Issue, Inc. v. Moore,*
  116 F.4th 211 (4th Cir. 2024) ....................................................................6

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022) ...........................................................................6, 12, 13

*Richmond Newspapers, Inc. v. Virginia,*
  448 U.S. 555 (1980) ..................................................................................9

*United States v. Hansen,*
  599 U.S. 762 (2023) ..................................................................................6

*United States v. Rahimi,*
  602 U.S. 680 (2024) ...............................................................................5, 6

## Statutes

Fairfax County Code § 6-2-1(A)(4) ...............................................................3, 4, 12

## Other Authorities

*2024 Summer Entertainment Series - June, July, August Program,*
  Fairfax County Park Authority,
  https://www.fairfaxcounty.gov/parks/sites/parks/files/Assets/docu
  ments/Performances/Summer-Entertainment-Insert.pdf...................................12

An Act to Preserve the Peace and Harmony of the People of This
  State, tit. 16, no. 285, §§ 1-3, 1870 Ga. Laws 421, 421 .....................................7

Arlin J. Benjamin, Jr. et al., *Effects of Weapons on Aggressive Thoughts, Angry Feelings, Hostile Appraisals, and Aggressive Behavior: A Meta-Analytic Review of the Weapons Effect Literature*, 22 Personality & Soc. Psych. Rev. 347 (2018), https://tinyurl.com/4vm4bzz2 ...............................................................19

*Armed Assembly: Guns, Demonstrations, and Political Violence in America*, Everytown & Armed Conflict Location & Event Data Project (Aug. 23, 2021), https://tinyurl.com/4p2838f7 .........................13, 17, 18

Brief for Giffords Law Center and Brady as *Amici Curiae* Supporting Appellees, *We The Patriots, Inc. v. Grisham*, 119 F.4th 1253 (10th Cir. 2024) (No. 23-2166) ................................................................................3

Dahlia Lithwick & Mark Joseph Stern, *The Guns Won*, Slate (Aug. 14, 2017), https://tinyurl.com/2zetvdwv .....................................13, 14

David Welch, *Michigan Cancels Legislative Session to Avoid Armed Protestors*, Bloomberg News (May 14, 2020), https://tinyurl.com/53e9unpz ..........................................................13

Diana Palmer, *Fired Up or Shut Down: The Chilling Effect of Open Carry On First Amendment Expression at Public Protests*, Ne. Univ. (2021).................................................................................14, 15

*Farmers Market*, Fairfax County Virginia, https://www.fairfaxcounty.gov/parks/farmersmarkets.................................10, 12

*Farmers Markets Vendor Information*, Fairfax County Virginia, https://www.fairfaxcounty.gov/parks/farmersmarkets/become-vendor ....................................................................................10

Gregory P. Magarian, *Conflicting Reports: When Gun Rights Threaten Free Speech*, 83 Law & Contemp. Probs. 169, 169 (2020)................13

Heather Zwicker, *Some residents protest McLean library display*, Fairfax County Times (Dec. 17, 2021), https://www.fairfaxtimes.com/articles/fairfax_county/some-residents-protest-mclean-library-display/ article_239d069e-5e8f-11ec-aa53-272f936c7e38.html ..........................................................12

*Historical Gun Laws*, Duke Center for Firearms Law, https://firearmslaw.duke.edu/repository-of-historical-gun-laws..........................7

John J. Donohue et al., *Why Does Right-to-Carry Cause Violent Crime to Increase?* at 2, Nat'l Bur. of Econ. Res., Working Paper No. 30190, at 2 (rev. June 2023)................................................17, 18

Joseph Blocher & Reva B. Siegel, *Guided by History: Protecting the Public Sphere from Weapons Threats Under Bruen*, 98 N.Y.U. L. Rev. 1795 (2023) ....................................................................8

Joseph Blocher & Reva B. Siegel, *When Guns Threaten the Public Sphere: A New Account of Public Safety Regulation Under Heller*, 116 Nw. U. L. Rev. 139 (2021) ........................................................................ 8

Luke Lukert, *Unions rally to support a casino that could go up in Fairfax County*, wtop news (Oct. 22, 2024), https://wtop.com/fairfax-county/2024/10/unions-rally-to-support-a-casino-that-could-go-up-in-fairfax-county/ ........................ 12

Michael Siegel et al., *Easiness of Legal Access to Concealed Firearm Permits and Homicide Rates in the United States*, 107 Am. J. Pub. Health 1923 (Dec. 2017) ............................................................ 18, 19

Mitchell L. Doucette et al., *Impact of Changes to Concealed-Carry Weapons Laws on Fatal and Nonfatal Violent Crime, 1980-2019*, 192 Am. J. of Epidemiology 342 (Mar. 2023) .............................. 18

*Park Use Permits*, Fairfax County Virginia, https://www.fairfaxcounty.gov/parks/permits ........................ 10

*Rally for Collective Bargaining Rights for Essential Workers*, Fairfax Democrats, https://www.fairfaxdemocrats.org/event/rally-for-collective-bargaining-rights-for-essential-workers/ ............ 11, 12

*Rally for Fair Pay*, Fairfax Democrats, https://www.fairfaxdemocrats.org/event/rally-for-fair-pay/ ........ 11, 12

*Rally: Say NO to DescaNO!*, Fairfax Republicans, https://fairfaxgop.org/event/say-no-to-descano-rally-w-stand-up-virginia-bolster-the-blue/ ................................... 11

Sophie Bethune & Elizabeth Lewan, *One-Third of US Adults Say Fear of Mass Shootings Prevents Them from Going to Certain Places or Events*, Am. Psych. Ass'n (Aug. 15, 2019), https://www.apa.org/news/press/releases/ 2019/08/fear-mass-shooting ................................... 15, 16

*Spring Flea Market*, Reston Community Center, https://restoncommunitycenter.com/event/spring-flea-market/ ............ 11, 12

## Constitutional Provisions

U.S. CONST. I ............................................................ 9

## STATEMENT OF INTEREST OF *AMICI*[1]

This brief is filed by *Amici* Brady Center to Prevent Gun Violence ("Brady") and Giffords Law Center to Prevent Gun Violence ("Giffords Law Center"). These organizations are committed to reducing the gun violence that pervades the United States.

Founded in 1974, Brady is the nation's most longstanding nonpartisan, nonprofit organization dedicated to reducing gun violence through education, research, and legal advocacy. Brady works to free America from gun violence by passing and defending gun violence prevention laws, reforming the gun industry, and educating the public about responsible gun ownership. Brady has a substantial interest in ensuring that the U.S. Constitution is construed to protect Americans' fundamental right to live and protecting the authority of democratically elected officials to address the nation's gun violence epidemic. Brady leads a number of initiatives aimed at combating gun violence, including Veterans for Gun Reform, the End Family Fire Program, and #ShowYourSafety.

Formed in 1993 by a group of attorneys after a gun massacre at a San

---

[1] All parties have consented to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), the undersigned counsel further represent that no party or party's counsel authored this brief in whole or in part; that no party or party's counsel contributed money that was intended to fund preparation or submission of this brief; and that no person other than the *amici* and counsel identified herein contributed money that was intended to fund preparation or submission of this brief.

Francisco law firm, Giffords Law Center is a nonprofit organization serving lawmakers, advocates, legal professionals, gun violence survivors, and others who seek to reduce gun violence and improve community safety. The organization was renamed Giffords Law Center in 2017 after joining forces with the gun-safety organization led by former Congresswoman Gabrielle Giffords. Today, through partnerships with gun violence researchers, public health experts, and community organizations, Giffords Law Center researches, drafts, and defends the laws, policies, and programs proven to effectively reduce gun violence. Together with its partner organization Giffords, Giffords Law Center also advocates for the interests of gun owners and law enforcement officials who understand that Second Amendment rights have always been consistent with gun safety legislation and community violence prevention strategies.

Giffords Law Center and Brady have a shared interest in reducing gun violence to protect the lives of all Americans. *Amici* have deep knowledge and experience regarding firearm regulations and gun violence in the United States. In this brief, *amici* show that Fairfax County's Code § 6-2-1(A)(4), which prohibits carrying a firearm at or within a place that is being used by or is adjacent to a County-permitted public event or an event that would otherwise require a County permit, is consistent with the history and tradition of the nation—a history and tradition that preserves and protects the free exercise of civic engagement and political

participation—as well as the Supreme Court's "sensitive places" doctrine.

## INTRODUCTION

The provisions of Fairfax County Code § 6-2-1 at issue on appeal are few and narrow: whether Defendants-Appellees Fairfax County, Virginia and Chief of Police Kevin Davis may ban firearms at or within public parks owned or operated by the County or by any other authority or government entity created or controlled by the County (the "Parks Restriction"); and whether Fairfax County may ban firearms in locations that are being used by or are adjacent to a County-permitted event or an event that would otherwise require a County permit (the "Events Restriction"). Both the Parks Restriction and Events Restriction are fully consistent with the Second Amendment. *Amici* focus solely on the Events Restriction in this brief, but join the County's arguments as to the Parks Restriction. *See, e.g.*, Brief for Giffords Law Center and Brady as *Amici Curiae* Supporting Appellees, W*e The Patriots, Inc. v. Grisham*, 119 F.4th 1253 (10th Cir. 2024) (No. 23-2166).

Places of public assembly where county-permitted events occur are "sensitive places," where prohibition of firearms by legislative action is constitutional. Engagement in civic life is a core American value, rooted in tradition, put into practice through constitutional protections for the right to vote, assemble, and publish, and exemplified by the conventions, debates, and public pronouncements of the nation's Founders. Local governments have the power and duty to protect the

rights of their residents to peacefully assemble in pursuit of civic engagement. Thus, Fairfax County's protection of public, permitted events as "sensitive places" safeguards Fairfax County residents' ability to exercise their First Amendment rights, participate in civic life, and fully engage in civil society.

*Amici* make three points in this brief: (1) Plaintiffs' purported facial challenge to the Events Restriction fails because such locations are sensitive places where firearm restrictions are critical to safeguarding those engaged in exercising their right to peacefully assemble; (2) rights granted by the First Amendment must not be overridden by an overly broad interpretation of the Second Amendment; and (3) the Events Restriction protects public safety.

## ARGUMENT

### I. Plaintiffs' Facial Challenge To The Events Restriction Fails Because Certain County-Permitted Events Are Clearly Sensitive Places.

The Events Restriction prohibits firearms in locations that are being used by or are adjacent to "a County-permitted event or an event that would otherwise require a County permit." Fairfax County Code § 6-2-1(A)(4). The District Court properly viewed the Events Restriction as a "limited restriction" that "fits neatly within this country's history and tradition of firearm regulation" and is "relevantly similar" to "'public assembly,' 'public gathering,' and 'to the terror of the people'" historical laws. JA1788. This holding should be affirmed.

Plaintiffs nevertheless claim that the Events Restriction is facially

unconstitutional under the Second Amendment. *See* Appellants' Opening Br. at 14. At the same time, Plaintiffs appear to concede that the Events Restriction has some applications that are constitutional. Plaintiffs exclusively argue that the Events Restriction is unconstitutional as applied to: (1) events that did not, but *should have*, obtained permits; and (2) areas *adjacent to* permitted events. *Id.* at 48–51.[2] Plaintiffs do not appear to challenge the primary application of the Events Restriction—that is, the restrictions on carrying firearms at County-permitted events.

This concession alone defeats Plaintiffs' challenge. As both the Supreme Court and this Court have recently reaffirmed, facial challenges must fail if there are any constitutional applications of the challenged law. In *United States v. Rahimi*, the Supreme Court once again confirmed that the standard for a facial challenge is an exacting one. Indeed, facial challenges are the "most difficult challenge[s] to mount successfully, because [they] require[] a defendant to establish that no set of circumstances exists under which the [challenged law] would be valid." *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (internal quotations omitted). "[T]o prevail, the Government need only demonstrate that [the challenged law] is

---

[2] In any event, this broad Second Amendment challenge has been forfeited because Plaintiffs did not argue before the District Court that events otherwise requiring a permit violate the Second Amendment. JA1786, JA18 ¶¶ 49–50. Plaintiffs cannot expand their challenge on appeal to include the events themselves. *See, e.g.*, *Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020).

constitutional in *some* of its applications." *Id.* (emphasis added). And "[w]hen legislation and the Constitution brush up against each other, [a court's] task is to seek harmony, not to manufacture conflict." *Id.* at 701 (quoting *United States v. Hansen*, 599 U.S. 762, 781 (2023) (alterations in original)). Similarly, this Court, sitting en banc, recently observed that "facial challenges are disfavored because they often rest on speculation, short circuit the democratic process, and run contrary to the fundamental principle of judicial restraint." *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 226 (4th Cir. 2024) (en banc) (internal quotations omitted).

Plaintiffs' facial challenge here fails because at least some—if not all—of the statute's applications are constitutional. The Events Restriction applies to protests, markets, and concerts in Fairfax County—to name a few. These are historically sensitive places where firearm restrictions are constitutionally permissible. As the Court stated in *Heller* and reaffirmed in *Bruen*, "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" are "longstanding" and "presumptively lawful." *District of Columbia v. Heller*, 554 U.S. 570, 626, 627 n.1 (2008); *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 3 (2022).[3] A review of history confirms that governments at all levels have

---

[3] Although the Supreme Court has declined to comprehensively define what constitutes a sensitive place, it instructed that sensitive places include locations where weapons were historically prohibited—and places relevantly analogous to such locations. Modern-day regulations need not be a "dead ringer for historical precursors" to "pass constitutional muster." *Bruen*, 597 U.S. at 3.

historically regulated carrying firearms at public forums, public events, and places of public assembly.

There is "a well-established and representative tradition of regulating firearms in public forums and quintessentially crowded places, enduring from medieval England to Reconstruction America and beyond." *Antonyuk v. James*, 120 F.4th 941, 1019 (2d Cir. 2024); *see also Frey v. Nigrelli*, 661 F. Supp. 3d 176, 201–02 (S.D.N.Y. 2023) (collecting historical evidence of firearms restrictions in public forums). Laws throughout the country from the latter half of the 19th century also "prohibited firearms involving instances where there are public gatherings engaged in recreational, entertainment, or expressive purposes." *Frey*, 661 F. Supp. 3d at 202.[4] Laws like these reflect the "common law tradition" of "preserving the peace

---

[4] *See, e.g.*, An Act to Preserve the Peace and Harmony of the People of This State, tit. 16, no. 285, §§ 1-3, 1870 Ga. Laws 421, 421 ("no person in said State of Georgia be permitted or allowed to carry about his or her person any . . . pistol or revolver, or any kind of deadly weapon, to any court of justice, or any election ground or precinct, or any place of public worship, or any other public gathering in this State, except militia muster-grounds."); Leander G. Pitman, The Statutes of Oklahoma at 495–96 (1890) (prohibiting, *inter alia*, the carrying of any "pistol" or "revolver" "into any church or religious assembly, any school room or other place where persons are assembled for public worship, for amusement, or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into any ball room, or to any party or social gathering, or to any election, or to any place where intoxicating liquors are sold, or to any political convention, or to any other public assembly"); James H. Shankland, Public Statutes of the State of Tennessee at 108 (1871) (1869 law prohibiting any person from "attending any fair, race course, or other public assembly of the people, to carry about his person, concealed or otherwise, any pistol"). For ease of reference, these statutes are available online in

7

and public order" by restricting the carry and brandishing of arms in public places. Joseph Blocher & Reva B. Siegel, *When Guns Threaten the Public Sphere: A New Account of Public Safety Regulation Under* Heller, 116 Nw. U. L. Rev. 139, 169–70 (2021).

"The tradition of regulating firearms in quintessentially crowded places was continued throughout the history of our Nation." *Antonyuk*, 120 F.4th at 1021 (internal quotation marks omitted). "These laws appear to recognize," just as Fairfax County did, "that the presence of groups of people, often in confined spaces, renders a location uniquely vulnerable to firearm violence." *Frey*, 661 F. Supp. 3d at 202. The Events Restriction similarly seeks to minimize the risk of gun violence in dense public gatherings.

These sensitive places reflect the government's longstanding authority to exclude weapons from places of public gathering and thus to protect a "public sphere for democratic dialogue, democratic governance, and the reproduction of *democratic community* in which people can relate freely without intimidation or coercion." Joseph Blocher & Reva B. Siegel, *Guided by History: Protecting the Public Sphere from Weapons Threats Under* Bruen, 98 N.Y.U. L. Rev. 1795, 1799 (2023). Supreme Court precedent shows that the government has the authority to "protect

---

the Duke Repository of Historical Gun Laws. *Historical Gun Laws*, Duke Center for Firearms Law, https://firearmslaw.duke.edu/repository-of-historical-gun-laws.

valued civic activities and the ability of all citizens to live free of terror and intimidation." Blocher & Siegel, 116 Nw. U. L. Rev. at 176 (referencing *Heller*). *Heller* relies on common law history that affirms the government's authority—and responsibility—to protect such activities. *See Heller*, 554 U.S. at 626–28.

Based on this history supporting exclusion of firearms in public forums like fairs and markets, and other public spheres of democratic dialogue, at least "some" of the Events Restriction—which applies to fairs, markets, protests, and concerts—is manifestly constitutional. The facial challenge therefore fails.

## II. In Any Event, The Second Amendment Cannot Override First Amendment Rights.

The unifying quality of all the locations impacted by the Events Restriction is their vital role in facilitating participation in American democracy and civic engagement. Peaceful public assembly is the apex of civic engagement in American society. *See* U.S. Const. amend. 1. The Supreme Court has explained that "[f]rom the [nation's] outset, the right of assembly was regarded not only as an independent right but also as a catalyst to augment the free exercise of the other First Amendment rights with which it was deliberately linked by the draftsmen." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 577 (1980). The "right of peaceable assembly" is "equally fundamental" to other constitutionally protected rights. *De Jonge v. State of Oregon*, 299 U.S. 353, 364 (1937).

## A.    Fairfax County Regularly Issues Event Permits For First Amendment Activities.

The Fairfax County Park Authority (FCPA) issues permits for a wide range of activities throughout the county, not just activities in parks.  For example, a Special Use Permit is needed for any gathering with more than seventy-five people on FCPA property, or any "public gathering," which includes demonstrations, vigils, ceremonies, meetings, rallies, shows, and concerts.  *Park Use Permits*, Fairfax County Virginia, https://www.fairfaxcounty.gov/parks/permits.  The FCPA also operates ten farmers markets across Fairfax County.  *See Farmers Market*, Fairfax County Virginia, https://www.fairfaxcounty.gov/parks/farmersmarkets.  To ensure that FCPA's standards are met, vendors seeking to sell goods must apply in advance for approval.  *Farmers Markets Vendor Information*, Fairfax County Virginia, https://www.fairfaxcounty.gov/parks/farmersmarkets/become-vendor.

Events that are subject to County permit requirements often involve First-Amendment protected activities, such as protests, rallies, concerts, and other public gatherings.  Recent examples of events that appear to meet County requirements for a permit include:

| Date | Event | Description | Location |
|------|-------|-------------|----------|
| 4/13/2021 | Protest | Rally for Recall Election of County Prosecutor | Fairfax County Government Center |

| 10/5/2021 | Protest | Rally for Collective Bargaining Rights for Essential Workers | Fairfax County Government Center |
| 12/11/2021 | Protest | Protest Against Library Display | Outside the Dolley Madison Public Library |
| 3/4/2023 | Public Forum | Spring Flea Market | Reston Community Center |
| 4/12/2023 | Protest | Rally for Fair Pay | Fairfax County Government Center |
| 5/1/2024 – 10/30/2024 | Public Forum | Wakefield Farmers Market | Audrey Moore Recreation Center |
| 6/15/2024 | Expressive Event | Mr. Lilo (Children's Songs) | Mason District Park Amphitheater |
| 10/22/2024 | Protest | Pro-Casino Construction Protest | Fairfax County Government Center |
| 5/1/2024 – 11/6/2024 | Public Forum | Oakmont Farmers Market | Oakmont Recreation Center |
| 5/5/2024 – 11/10/2024 | Public Forum | Lorton Farmers Market | VRE Lorton Station |
| 4/17/2024 – 12/18/2024 | Public Forum | Mount Vernon Farmers Market | Sherwood Regional Library |
| 4/20/2024 – 12/21/2024 | Public Forum | Burke Farmers Market | Burke Centre Virginia Railway Express (VRE) Station[5] |

---

[5] *Rally: Say NO to DescaNO!*, Fairfax Republicans, https://fairfaxgop.org/event/say-no-to-descano-rally-w-stand-up-virginia-bolster-the-blue/; *Rally for Collective Bargaining Rights for Essential Workers*, Fairfax Democrats, https://www.fairfaxdemocrats.org/event/rally-for-collective-bargaining-rights-for-

All County-permitted events and County events that should have been County-permitted are subject to the Events Restriction's firearms prohibition. Fairfax County Code § 6-2-1(A)(4). Under *Bruen*, prohibiting firearms at events and activities occurring in courthouses, legislative assemblies, civic buildings, and analogous locations—such as those above—is well within the sphere of what governments can regulate without infringing on Second Amendment guarantees. *See* 597 U.S. at 30. Fairfax County's Events Restriction applies the same reasonable, common-sense protection to other key locations where peaceful assembly occurs. There is no principled reason that the government can prohibit firearms at an event on the courthouse steps or in a legislative assembly—as *Heller* and *Bruen* make clear that it can—but be held powerless to regulate the same type of activity, similarly on government land, presenting similar public safety concerns.

---

essential-workers/; Heather Zwicker, *Some residents protest McLean library display*, Fairfax County Times (Dec. 17, 2021), https://www.fairfaxtimes.com/articles/fairfax_county/some-residents-protest-mclean-library-display/article_239d069e-5e8f-11ec-aa53-272f936c7e38.html; *Spring Flea Market*, Reston Community Center, https://restoncommunitycenter.com/event/spring-flea-market/; *Rally for Fair Pay*, Fairfax Democrats, https://www.fairfaxdemocrats.org/event/rally-for-fair-pay/; Farmers Market, Fairfax County Virginia, https://www.fairfaxcounty.gov/parks/farmersmarkets; *2024 Summer Entertainment Series – June, July, August Program*, Fairfax County Park Authority, https://www.fairfaxcounty.gov/parks/sites/parks/files/Assets/documents/Performances/Summer-Entertainment-Insert.pdf; Luke Lukert, *Unions rally to support a casino that could go up in Fairfax County*, wtop news (Oct. 22, 2024), https://wtop.com/fairfax-county/2024/10/unions-rally-to-support-a-casino-that-could-go-up-in-fairfax-county/.

**B.    Firearms Disrupt And Deter Peaceful Public Assembly, Chilling First Amendment Rights.**

Plaintiffs' overly broad interpretation of the Second Amendment—which would ignore the historical limitations acknowledged in *Bruen*—presents a direct collision with core First Amendment protections.  If more people are allowed to carry guns in public places where people typically gather to exercise their rights of assembly and free speech, it will become more dangerous and debilitating to peaceably assemble, organize, march, rally, and express ideas and beliefs in public settings.  *See* Gregory P. Magarian, *Conflicting Reports: When Gun Rights Threaten Free Speech*, 83 Law & Contemp. Probs. 169, 169 (2020) ("In the real world, . . . guns far more commonly impede and chill free speech than protect or promote it.").  Many members of those groups that have historically been silenced will surely experience an especially intense chilling effect.  *See generally Armed Assembly: Guns, Demonstrations, and Political Violence in America*, Everytown & Armed Conflict Location & Event Data Project (Aug. 23, 2021), https://tinyurl.com/4p2838f7 [hereinafter *Armed Assembly*].

The mere legal existence of First Amendment rights affords little practical assurance when people are facing the frightening reality of hostile listeners openly carrying guns.  *See* David Welch, *Michigan Cancels Legislative Session to Avoid Armed Protestors*, Bloomberg News (May 14, 2020), https://tinyurl.com/53e9unpz; Dahlia Lithwick & Mark Joseph Stern, *The Guns Won*, Slate (Aug. 14, 2017),

https://tinyurl.com/2zetvdwv ("When the police are literally too afraid of armed protesters to stop a melee, First Amendment values are diminished; discussion is supplanted by disorder and even death . . . .").

The County's undisputed expert survey found that Fairfax County residents were less likely to attend public parks, open-air markets, and political protests in Fairfax County if firearms were present.  JA1152-53 ¶¶ 25-28, JA1183-84.  The survey found that the presence of firearms made Fairfax County residents feel "less safe," even those who own firearms.  JA1146 ¶ 23b-d, JA1180.

The chilling effect of firearms on First Amendment activities is not unique to Fairfax County.  Research shows that Americans are significantly less likely to attend protests when they believe that firearms will be present.  *See* Diana Palmer, *Fired Up or Shut Down: The Chilling Effect of Open Carry On First Amendment Expression at Public Protests*, Ne. Univ. (2021).  Public policy expert Dr. Diana Palmer conducted a study on protest participants' perception of firearms at public protests and how open carry practices affected their desire to attend, carry signs, or speak out in the presence of guns.  *See id.* at 26.  Dr. Palmer's study comprised a control group, for which firearms were not mentioned in the survey questions, and an experimental group for which firearms were mentioned.  *Id.* at 54.  The experimental group participants were much less willing to participate in expressive activities than the control group participants to whom firearms were not mentioned.

14

*Id.* at 150. And this was true regardless of political ideology, gun ownership, and geographic region. *Id.* The mere presence of firearms at a protest was a "deal-breaker" for many. *Id.* at 127. Participants shared the following sentiments:

- "I think the presence of firearms is meant to intimidate the opposition with the potential for physical violence. Not my type of protest." *Id.* at 135.

- "I'd be afraid of getting hurt or killed." *Id.*

- "I would not carry a sign with my opinions because I would fear that I would offend someone, and it might lead to a violent confrontation." *Id.*

- "As long as protesters are carrying firearms, I am not in." *Id.* at 128.

- Self-reporting gun owner stated, "I would not want to attend a protest if there are others with weapons." *Id.* at 137–38.

Gun owners and non-gun owners alike shared similar sentiments about distrusting others with guns and described a shared belief that firearms can be dangerous at protests. *Id.* at 137–38. Dr. Palmer's study illustrates the chilling effect that the mere presence of firearms has on citizens' interest in engaging in their First Amendment rights to free speech and peaceful assembly.

A survey conducted by the American Psychological Association found that the "fear of mass shootings stops [survey respondents] from going to certain places and events." *See* Sophie Bethune & Elizabeth Lewan, *One-Third of US Adults Say Fear of Mass Shootings Prevents Them from Going to Certain Places or Events*, Am. Psych. Ass'n (Aug. 15, 2019), https://www.apa.org/news/press/releases/2019/08/fear-mass-shooting. Indeed, more than 50 percent of survey respondents

said they were stressed about the possibility of a mass shooting at a "public event."
*Id.*

In light of these troubling facts, state and local governments must be able to appropriately regulate firearms in modern First Amendment-protected spaces—just as Fairfax County does. The right to carry firearms cannot legally be elevated above First Amendment rights; under the Constitution, communities are not powerless to address the potential for gun violence, intimidation, and other misuse of firearms in civic forums. The courts cannot reasonably conclude that the Framers of the Second and Fourteenth Amendments meant to create a right to bear arms that would overwhelm and defeat the First Amendment rights of free speech and peaceable public assembly, so self-evidently critical to the functioning and maintenance of our democracy and the republican form of government guaranteed to all of the States by Article V of the Constitution. There is no evidence that the Framers would ever have countenanced such an imbalance in our constitutional protections.

## III.  The Events Restriction Protects Public Safety.

Considerable research validates this fear of gun violence at First Amendment activities. Despite whatever marketing slogans the gun industry uses in order to sell more products, the actual data establishes that more guns mean more violence. Gun safety advocates Armed Conflict Location & Event Data Project ("Armed Conflict Data Project") and Everytown for Gun Safety Support Fund ("Everytown") have

proven that access to firearms during public assemblies increases the risk of violence or death to attendees. *See Armed Assembly*; *see also* John J. Donohue et al., *Why Does Right-to-Carry Cause Violent Crime to Increase?* at 2, Nat'l Bur. of Econ. Res., Working Paper No. 30190, at 2 (rev. June 2023), https://tinyurl.com/4zw4z8y9 ("The predominant conclusion of . . . recent literature is that [right-to-carry] laws increase violent crime.").

Armed Conflict Data Project and Everytown conducted a study on demonstrations[6] throughout the United States from January 2020 to June 2021 and documented at least 560 events where demonstrators, counter-demonstrators, or other groups or individual attendees carried or brandished firearms. *Armed Assembly* at 1. The data revealed that armed demonstrations[7] were six times more likely than unarmed demonstrations to be violent or destructive.[8] *Id.* at 2. One out of every six demonstrations where firearms were present included reports of violent or destructive activity, whereas that figure is one out of thirty-seven for

---

[6] Armed Conflict Data Project and Everytown define demonstrations as "all physical congregations of three or more people . . . when they are directed against a political entity, government institution, policy, group or individual, tradition or event, businesses, or other private institutions." *Armed Assembly* at 2 n.5.

[7] Armed Conflict Data Project and Everytown define armed demonstrations as "demonstrations in which individuals and groups—including militias, militant social movements, and unaffiliated individuals and groups—are present and identified as equipped with firearms in print, photographs, and/or video." *Id.* at 2.

[8] The study classified actions such as looting or vandalism as destructive behavior. *Id.* at 1.

demonstrations where no firearms were identified. *Id.* at 3. These figures are magnified for events involving fatalities. Fatalities were reported at one of every sixty-two armed demonstrations, whereas a fatality occurred in merely one of every 2,963 demonstrations where no firearm was identified. *Id.* Moreover, the study identified over 100 incidents of armed demonstrations at legislative buildings and vote counting centers across twenty-five states and Washington, D.C. *Id.* at 6.

Other empirical analyses similarly reveal persistent increases in violent crime rates in states with more permissive licensing regimes. For example, in a 2023 study analyzing data from sixty-five major U.S. cities, Stanford University Professor John Donohue and his colleagues reported that "[i]n cities with an average population of over 250,000 between 1979 and 2019, . . . the introduction of [right-to-carry laws] increases violent crime by 20 percent," "increases gun theft by 50 percent," and "inhibit[s] the ability of police to solve crimes." *See Why Does Right-to-Carry Cause Violent Crime to Increase?* at 1, 14. These findings are consistent with other studies analyzing the relationship between right-to-carry laws and violence. *See* Mitchell L. Doucette et al., *Impact of Changes to Concealed-Carry Weapons Laws on Fatal and Nonfatal Violent Crime*, *1980-2019*, 192 Am. J. of Epidemiology 342, 350 (Mar. 2023) (finding that states that moved from a may-issue to a shall-issue licensing regime resulted in increased rates of violent crime); Michael Siegel et al., *Easiness of Legal Access to Concealed Firearm Permits and Homicide Rates in the*

18

*United States*, 107 Am. J. Pub. Health 1923, 1927–28 (Dec. 2017) (finding that between 1991 and 2015, states with shall-issue regimes had higher homicide rates than states with may-issue regimes).  These findings are consistent with the broad body of behavioral research that demonstrates that, even apart from the more concrete risks presented, merely seeing a weapon can increase a person's aggressive thoughts, hostility, and aggressive behavior.  *See, e.g.*, Arlin J. Benjamin, Jr. et al., *Effects of Weapons on Aggressive Thoughts, Angry Feelings, Hostile Appraisals, and Aggressive Behavior: A Meta-Analytic Review of the Weapons Effect Literature*, 22 Personality & Soc. Psych. Rev. 347, 359 (2018), https://tinyurl.com/4vm4bzz2.

In short, Fairfax County's public officials reasonably concluded that prohibiting firearms at County-permitted public events reduces crime and enhances public safety.  This research directly contradicts gun rights activists' fundamentally mistaken argument that easy access to firearms promotes public safety.  Plaintiffs may disagree with Fairfax County's policy choice—they may instead believe that having unrestricted access to guns everywhere is the best way to protect and promote public safety.  But our system of government establishes that the representatives of the people acting in popularly elected legislatures—like the Fairfax County Board of Supervisors—are empowered to make this type of reasonable policy judgment without interference by the courts.

## CONCLUSION

For the foregoing reasons, *Amici* support affirmance of the District Court's Order.

Dated: December 23, 2024      Respectfully submitted,

       */s/ George J. Hazel*

       George J. Hazel
       *Counsel of Record*

Esther Sanchez-Gomez
Billy Clark
GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE
268 Bush St., #555
San Francisco, CA 94104
(415) 433-2062

Douglas N. Letter
Shira Lauren Feldman
BRADY CENTER TO PREVENT GUN VIOLENCE
840 First St., NE Suite 400
Washington, D.C. 20002
(202) 370-8100

Hayley N. Lawrence
GIBSON, DUNN & CRUTCHER LLP
1700 M St., N.W.
Washington, D.C. 20036
(202) 955-8500

Seton H. O'Brien
Jamie Miller
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

Caelin Moriarity Miltko
GIBSON, DUNN & CRUTCHER LLP
1801 California St., Suite 4200
Denver, CO 80202
(303) 298-5936

Marie C. Baldwin
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Ave., Suite 2100
Dallas, TX 75201
(214) 698-3100

*Counsel for Amici Curiae*

<u>CERTIFICATE OF COMPLIANCE</u>

The foregoing brief complies with the type-volume limitations in Fed. R. App. P. 29(a)(5) and 32(a)(7) because it contains 4,464 words, excluding those parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief was produced in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

*/s/ George J. Hazel*
George J. Hazel

<u>CERTIFICATE OF SERVICE</u>

I certify that on December 23, 2024, the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. All counsel of record are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

<u>*/s/ George J. Hazel*</u>
George J. Hazel