**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1886

KIMBERLY LAFAVE; GLENN M. TAUBMAN; ROBERT HOLZHAUER,

Plaintiffs – Appellants,

v.

THE COUNTY OF FAIRFAX, VIRGINIA; KEVIN DAVIS, in his official capacity as Chief of Police,

Defendants – Appellees.

------------------------------

CITY OF RICHMOND; DISTRICT OF COLUMBIA; ILLINOIS; CALIFORNIA; COLORADO; CONNECTICUT; DELAWARE; HAWAII; MASSACHUSETTS; MINNESOTA; NEVADA; NEW JERSEY; NEW YORK; OREGON; PENNSYLVANIA; RHODE ISLAND; VERMONT; WASHINGTON; BRADY CENTER TO PREVENT GUN VIOLENCE; GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE,

Amici Supporting Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  William B. Porter, Magistrate Judge.  (1:23−cv−01605−WBP)

Argued:  May 7, 2025                                    Decided:  August 27, 2025

Before DIAZ, Chief Judge, and GREGORY and AGEE, Circuit Judges.

Affirmed in part, vacated in part, and remanded with instructions by published opinion. Chief Judge Diaz wrote the opinion, in which Judge Gregory and Judge Agee joined.

---

**ARGUED:** Stephen Porter Halbrook, Fairfax, Virginia, for Appellants. Janet Rhiannon Carter, EVERYTOWN LAW, New York, New York, for Appellees. **ON BRIEF:** Earl N. "Trey" Mayfield, III, CHALMERS, ADAMS, BACKER & KAUFMAN, LLC, Fairfax, Virginia, for Appellants. Elizabeth D. Teare, Daniel Robinson, John W. Burton, OFFICE OF THE COUNTY ATTORNEY, Fairfax, Virginia; Douglas R. Kay, Thomas W. Repczynski, Anders T. Sleight, OFFIT KURMAN, P.C., Tysons Corner, Virginia; William J. Taylor, Jr., Priyanka Gupta Sen, Erik P. Fredericksen, New York, New York, Sana S. Mesiya, EVERYTOWN LAW, Washington, D.C., for Appellees. Mary B. McCord, Washington, D.C., Ben Gifford, Institute for Constitutional Advocacy and Protection, GEORGETOWN LAW, Brooklyn, New York, for Amicus City of Richmond. Brian L. Schwalb, Attorney General, Caroline S. Van Zile, Solicitor General, Ashwin P. Phatak, Principal Deputy Solicitor General, Anne A. Deng, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT COLUMBIA, Washington, D.C., for Amicus District of Columbia. Kwame Raoul, Attorney General, Jane Elinor Notz, Solicitor General, Sarah A. Hunger, Deputy Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF ILLINOIS, Chicago, Illinois, for Amicus State of Illinois. Rob Bonta, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF CALIFORNIA, Sacramento, California, for Amicus State of California. William Tong, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF CONNECTICUT, Hartford, Connecticut, for Amicus State of Connecticut. Anne E. Lopez, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF HAWAII, Honolulu, Hawaii, for Amicus State of Hawaii. Keith Ellison, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MINNESOTA, St. Paul, Minnesota, for Amicus State of Minnesota. Matthew J. Platkin, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NEW JERSEY, Trenton, New Jersey, for Amicus State of New Jersey. Ellen F. Rosenblum, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF OREGON, Salem, Oregon, for Amicus State of Oregon. Peter F. Neronha, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF RHODE ISLAND, Providence, Rhode Island, for Amicus State of Rhode Island. Robert W. Ferguson, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF WASHINGTON, Olympia, Washington, for Amicus State of Washington. Philip J. Weiser, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF COLORADO, Denver, Colorado, for Amicus State of Colorado. Kathleen Jennings, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF DELAWARE, Wilmington, Delaware, for Amicus State of Delaware. Andrea Campbell, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MASSACHUSETTS, Boston, Massachusetts, for Amicus Commonwealth of Massachusetts. Aaron D. Ford, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NEVADA, Carson City, Nevada, for Amicus State of Nevada. Letitia James, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NEW YORK, New York, New York, for Amicus State of New

York.  Michelle A. Henry, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF PENNSYLVANIA, Harrisburg, Pennsylvania, for Amicus Commonwealth of Pennsylvania.  Charity R. Clark, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VERMONT, Montpelier, Vermont, for Amicus State of Vermont.  George J. Hazel, Hayley N. Lawrence, Washington, D.C., Seton H. O'Brien, Jamie Miller, New York, New York, Caelin Moriarity Miltko, Denver, Colorado, Marie C. Baldwin, GIBSON, DUNN & CRUTCHER LLP, Dallas, Texas; Douglas N. Letter, Shira Lauren Feldman, BRADY CENTER TO PREVENT GUN VIOLENCE, Washington, D.C.; Esther Sanchez-Gomez, Billy Clark, GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE, San Francisco, California, for Amici Brady Center to Prevent Gun Violence and Giffords Law Center to Prevent Gun Violence.

———————————

DIAZ, Chief Judge:

In this case, we consider the so-called sensitive places doctrine, which allows the government to restrict the presence of firearms in certain locations. Plaintiffs, a trio of lawful gun owners, wish to bring their weapons to two such places where a Fairfax County, Virginia ordinance prohibits them from doing so. The places at issue are, first, county parks and, second, public spaces where (or near where) an event is taking place that requires a county permit.

Plaintiffs challenge the constitutionality of the County's restrictions, based on the Second Amendment as to both restrictions, and on the Fourteenth Amendment's vagueness doctrine as to the events restriction.

The district court granted summary judgment to the County, concluding (1) that both restrictions regulate firearms in sensitive places consistent with the Second Amendment, and (2) that the events restriction isn't unconstitutionally vague.[1]

We agree that Plaintiffs can't succeed on their facial challenge to the ordinance's restriction on arms in parks, so we affirm the district court's ruling on that front. But we conclude that Plaintiffs lack standing to challenge the constitutionality of the events restriction, so we vacate that part of the district court's judgment.

---

[1] Plaintiffs sued Fairfax County and its Chief of Police, Kevin Davis, in his official capacity. We refer to them together as "the County."

4

I.

A.

The County's ordinance prohibits "[t]he possession, carrying, or transportation of any firearms, ammunition, or components or combination thereof" in various places. Fairfax County, Va., Code § 6-2-1(A).[2]  Among those places are "any public park owned or operated by the County, or by any authority or local government entity created or controlled by the County," *id.* § 6-2-1(A)(2), and "any public street, road, alley, or sidewalk or public right-of-way or any other place of whatever nature that is open to the public and is being used by or is adjacent to a County-permitted event or an event that would otherwise require a County permit," *id.* § 6-2-1(A)(4).

Although the latter restriction references public streets and roads, it's undisputed that the events restriction only applies "on property that is . . . controlled or owned by Fairfax County," so it doesn't generally apply on "public roadways, which are instead controlled by the Virginia Department of Transportation."  J.A. 52 ¶ 11.

B.

The County operates 420 parks of varying sizes that receive between 12 and 16 million visitors per year.  Most park programming "is geared towards families and children," and approximately one quarter of visitors to county parks are children.  The

---

[2] The ordinance is available at https://library.municode.com/va/fairfax_county/codes/code_of_ordinances?nodeId=FACOCO_CH6WE_ART2FICOGOFAOTPUAR_S6-2-1FIAMCOCOTHPRCEAR [https://perma.cc/6ZYE-F2NR].

5

parks offer family-friendly recreational facilities and activities, like playgrounds, minigolf courses, carousels, train rides, and summer camps.

Pivotally, the County operates three preschools on park property, and a third party runs a preschool program in a park. The County also "offers drop-in daycare" at two recreation centers on park property.

### C.

Kimberly LaFave carries a handgun for protection. But she "endeavor[s] to avoid areas that [she] know[s] would be in violation of the Ordinance." J.A. 1606 ¶ 7. She does use the County's "parks and trails" while "walking dogs or engaging in other activities." J.A. 1605 ¶ 5.

LaFave claims that, "[s]hould [she] possess, carry, or transport firearms" at or near events that require a County permit, she would be "subject to arrest or prosecution." J.A. 1606 ¶ 9. And because she "may find [her]self in a motor vehicle with a firearm" while passing through an area where firearms are prohibited under the ordinance, she would "be in violation even if [she] do[es] not know [she is] in an area adjacent to an event that is permitted or should have a permit." J.A. 1607 ¶ 13. Glenn Taubman and Robert Holzhauer, the other two plaintiffs, make similar claims.

LaFave, Taubman, and Holzhauer sued to challenge the ordinance. They brought three claims: (1) violation of the Second Amendment as to the parks restriction, (2) violation of the Second Amendment as to the events restriction, and (3) violation of the Fourteenth Amendment's Due Process Clause based on the vagueness of the events

restriction. They sought a declaration that the parks and events restrictions are unconstitutional and an injunction barring their enforcement.

Plaintiffs moved for a preliminary injunction, which the district court denied. The parties then cross-moved for summary judgment. The court concluded that neither restriction violated the Second Amendment, and that the events restriction wasn't unconstitutionally vague. The court therefore entered summary judgment for the County. *LaFave v. County of Fairfax*, No. 23-cv-1605, 2024 WL 3928883, at *17 (E.D. Va. Aug. 23, 2024).

This appeal followed.


II.

We review a district court's summary judgment ruling de novo. *Elderberry of Weber City, LLC v. Living Ctrs.-Se., Inc.*, 794 F.3d 406, 411 (4th Cir. 2015). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On summary judgment, we "resolv[e] all doubts and inferences in favor of the non-moving party." *Bacon v. City of Richmond*, 475 F.3d 633, 637 (4th Cir. 2007) (citation omitted). And "[w]hen faced with cross-motions for summary judgment, we consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Id.* at 637–38 (quotation omitted).

III.

A.

The Second Amendment protects "the right of the people to keep and bear Arms." This right includes a "right to bear arms in public for self-defense." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 70 (2022).

That said, the right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). As with other constitutional rights, "the right secured by the Second Amendment is not unlimited." *Id.*

To determine whether a firearms restriction passes constitutional muster, we use a two-step framework. First, we look to the "Second Amendment's plain text." *United States v. Price*, 111 F.4th 392, 398 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1891 (2025). We consider (1) whether the person challenging the gun regulation is among "'the people whom the Second Amendment protects,'" (2) whether the person's weapons are "'in common use' for a lawful purpose," and (3) whether the person's "proposed course of conduct" is covered by the textual right to keep or to bear arms. *Id.* at 400–01 (quoting *Bruen*, 597 U.S. at 31–32). If so, "the Constitution presumptively protects [the challenger's] conduct." *Bruen*, 597 U.S. at 24.

At the second step, "[t]he government must . . . justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* At this stage, "we must engage in reasoning by analogy to determine whether a historical regulation is a proper analogue for a distinctly modern firearm

8

regulation." *Bianchi v. Brown*, 111 F.4th 438, 462 (4th Cir. 2024) (en banc) (cleaned up), *cert. denied*, 145 S. Ct. 1534 (2025).

Historical and modern regulations are likely proper analogues if they "impose a comparable burden on the right of armed self-defense and . . . that burden is comparably justified." *Bruen*, 597 U.S. at 29. "Why and how the [modern] regulation burdens the right" identified at the first step "are central" to the step two inquiry. *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

B.

With that framework in place, we turn to the sensitive places doctrine.

The doctrine has its genesis in *Heller*. There, the Court asserted, albeit in dictum, that "nothing in [its] opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." 554 U.S. at 626. And two years later, a plurality of the Court "repeat[ed] th[at] assurance[]" without elaboration. *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion).

We received further instruction on the sensitive places doctrine in *Bruen*, where the Court observed that "weapons were altogether prohibited" in "legislative assemblies, polling places, and courthouses" in the eighteenth and nineteenth centuries. 597 U.S. at 30. Because there weren't "disputes regarding the lawfulness of such prohibitions," the Court "assume[d] it settled that these locations were 'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment." *Id.*

9

And while "the historical record yields relatively few" eighteenth- and nineteenth-century sensitive places, the Court emphasized that we "can use analogies to . . . historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible." *Id.*

Applying this approach, *Bruen* rejected the notion that the sensitive places doctrine allows governments to prohibit firearms in "all places of public congregation that are not isolated from law enforcement," which would "define[] the category of 'sensitive places' far too broadly." *Id.* at 31. "[T]he island of Manhattan," said the Court, doesn't qualify as a sensitive place "simply because it is crowded and protected generally by the New York City Police Department." *Id.*

## IV.

We now consider Plaintiffs' challenges to the County's ordinance.[3]

## A.

Plaintiffs bring a facial challenge to the County's parks restriction, and that dooms their effort. In a facial challenge, "the challenger must establish that no set of

---

[3] The County argues that Plaintiffs failed to meet their burden at *Bruen*'s first step. There's some ambiguity on where the sensitive places doctrine falls in the analysis. *Compare Bianchi*, 111 F.4th at 450 (stating in dicta that sensitive places fall beyond the common-law tradition codified in the Second Amendment), *with McRorey v. Garland*, 99 F.4th 831, 838 (5th Cir. 2024) (asserting that "sensitive-place laws are likely captured by the plain text of the Second Amendment"), *and Price*, 111 F.4th at 417 n.2 (Quattlebaum, J., concurring in the judgment) (reading *Bruen* to "impl[y] that sensitive-place regulations are justified by historical tradition at step two, not by plain text at step one"). We decline to resolve this ambiguity here because Plaintiffs' challenges fail regardless of the answer.

circumstances exists under which the [challenged regulation] would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987), or that "the statute lacks any 'plainly legitimate sweep,'" *Bianchi*, 111 F.4th at 452 (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)). To prevail against a facial challenge, "the [g]overnment need only demonstrate that [the challenged law] is constitutional in *some* of its applications." *Rahimi*, 602 U.S. at 693 (emphasis added).

We conclude that the parks restriction is constitutional as applied to the three preschools and one preschool program on park property. If a person were cited under the County's ordinance for bringing a gun to one of these locations, the citation would withstand Plaintiffs' Second Amendment challenge. That's enough for us to reject the facial challenge to the parks restriction.

The Supreme Court has never held that the government may ban guns at schools consistent with the Second Amendment. It's said so only in dicta. *Heller*, 554 U.S. at 626; *McDonald*, 561 U.S. at 786 (plurality opinion); *Bruen*, 597 U.S. at 30; *id.* at 81 (Kavanaugh, J., concurring). But we're "obliged to afford great weight to Supreme Court dicta," *Fusaro v. Cogan*, 930 F.3d 241, 254 (4th Cir. 2019) (quotation omitted), especially where the Court has repeated its guidance, *cf. Hengle v. Treppa*, 19 F.4th 324, 347 (4th Cir. 2021). We therefore have no trouble concluding that restrictions on carrying firearms at schools, including the four preschools located within the County's parks, are "presumptively constitutional." *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 222 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1049 (2025).

11

Plaintiffs make no attempt to rebut that presumption. In fact, they concede that "firearms may be banned in . . . schools." Appellants' Br. at 11.

Instead, Plaintiffs suggest that the sheer breadth of the ordinance lowers their burden on a facial challenge. They argue that *Bruen*'s rejection of a firearms licensing regime requiring an applicant to justify a request for a license, while recognizing the sensitive places doctrine, obviates their need to show the unconstitutionality of the parks restriction in all its applications. And they suggest that the licensing regime in *Bruen* could have been constitutional when applied in sensitive places.

But that's wrong. The licensing regime in *Bruen* required all prospective gun owners to justify their wish to own a gun, regardless of where they sought to carry the weapon. There was no application of that regime that could satisfy the Second Amendment.

That's not this case. We consider here a limitation on carrying firearms that *is* (presumptively) constitutional in at least some of its applications: on school property within County parks.[4]

Plaintiffs chose to attack the parks restriction on its face but didn't bear the attendant burden. We therefore reject their challenge.[5] *See United States v. Canada*, 123 F.4th 159,

---

[4] Plaintiffs' cases adopting a more generous standard all concern vagueness and are unpersuasive in the context of a Second Amendment challenge. *See* Reply Br. at 23.

[5] The presence of schools on park property is enough to reject Plaintiffs' facial challenge. So we decline to address whether the presence of playgrounds, school groups, or other features and uses of the County's parks independently defeat the claim. *See*

161–62 (4th Cir. 2024) (rejecting a facial challenge to a disarmament statute where the statute could be applied constitutionality in some cases).

B.

Plaintiffs' challenges under the Second and Fourteenth Amendments to the events restriction fail for a different reason: Plaintiffs lack Article III standing.

1.

"Under Article III [of the Constitution], a party invoking the jurisdiction of a federal court must seek relief for a personal, particularized injury." *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 210 (4th Cir. 2020) (cleaned up). The oft-repeated rule is that a plaintiff must show (1) "an injury in fact" (2) "that is fairly traceable to the challenged conduct of the defendant" and (3) "that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The injury-in-fact element requires that the defendant's conduct cause "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quotation omitted). While a plaintiff must show an injury to have standing, they needn't wait for government enforcement or sanctions to bring a challenge. Instead, a plaintiff may sue upon "a threat" of enforcement that would implicate their legally protected interest. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

---

*Antonyuk v. James*, 120 F.4th 941, 1025 (2d Cir. 2024) (declining to engage in "line-drawing" on a facial challenge to a similar parks restriction).

To bring such a pre-enforcement suit, a plaintiff must "allege[] an intention" to do something prohibited by the statute and "a credible threat of prosecution" under it. *Id.* at 159 (quotation omitted). A credible threat of prosecution exists if the plaintiff alleges "fears of state persecution that are not imaginary or speculative and are actual and well-founded enough to establish that the statute will be enforced against them." *Hogan*, 971 F.3d at 217 (cleaned up). But "the claimed harm must not be so speculative as to lie at the end of a highly attenuated chain of possibilities." *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 629 (4th Cir. 2023) (quotation omitted).

2.

The district court found (with little explanation) that Plaintiffs established "a credible threat that they may be arrested[] because they intend to carry firearms . . . at events or [at places] adjacent to events that require a County permit." *LaFave*, 2024 WL 3928883, at *16. But the ordinance along with the enforcement guidelines that govern its application belie that conclusion. *See Hogan*, 971 F.3d at 218.

The ordinance requires notice of its requirements to be posted in places where it applies. As to the events restriction, the ordinance requires notice "at all entrances or other appropriate places of ingress and egress" in a regulated place. Fairfax County, Va., Code § 6-2-1(D)(1)(iv).

The County has disavowed any intent to enforce the ordinance when no notice has been posted. To that end, the County's Chief of Police has prohibited officers from "enforc[ing] the provisions of [the] ordinance [without] first confirming that signs providing [the required] notification are properly posted." J.A. 1553. And officers

14

"respond to Ordinance-related calls and dispatches by first looking for and confirming proper signage and notification of the Ordinance." J.A. 1541 ¶ 14. Plaintiffs call this enforcement guidance "farcical," but they provide no evidence that it isn't being followed.

The bottom line is that the County won't enforce the events restriction without first informing people (via proper notice) that they risk violating it. This conservative approach to enforcement is borne out in the Plaintiffs' declarations, which indicate that they carried firearms in public in Fairfax County both before and after the ordinance's enactment. In other words, Plaintiffs haven't changed their behavior because of the events restriction.

Nor have Plaintiffs identified a County-permitted event, or an area adjacent to one, that they've wanted to visit while armed since the ordinance's enactment. Instead, they speculate that they'd be subject to prosecution "[s]hould" they be near a permitted event with a firearm, *e.g.*, J.A. 1606 ¶ 9, or that they "may" violate the ordinance by driving through an area subject to it while carrying a weapon, *e.g.*, J.A. 1607 ¶ 13. These statements don't allege conduct that risks sanction under the ordinance.

Plaintiffs' theory of standing rests on their fears of unwittingly violating the events restriction. For example, they assert they're "left to guess" what qualifies as an area "adjacent" to a regulated place, *e.g.*, J.A. 1606 ¶ 10, and they "have no way of knowing whether [they] will be adjacent to" regulated property , *e.g.*, J.A. 1607 ¶ 12. They also say they don't "know [they] are in an area adjacent to an event that is permitted or should have a permit" while driving. *E.g.*, J.A. 1607 ¶ 13.

But Plaintiffs have identified no situation where their lack of awareness is likely to result in their prosecution, considering the ordinance's notice requirement and the County's

15

pronouncements that any enforcement would only follow proper notice. And Plaintiffs' fears that they may accidentally violate the events restriction by driving through an event with a firearm are belied by the uncontested fact that public roads are "controlled by the Virginia Department of Transportation" and thus not subject to the ordinance. J.A. 1543 ¶ 25; J.A. 52 ¶ 11. Plaintiffs therefore haven't demonstrated the "credible threat of prosecution" necessary to bring a pre-enforcement challenge to the events restriction. *Susan B. Anthony List*, 573 U.S. at 159.

Of course, it's "not necessary that [a] plaintiff first expose himself to actual arrest or prosecution" to bring a pre-enforcement challenge. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (cleaned up). But a plaintiff does need to "allege[] [a] concrete intention to (arguably) violate" the disputed restriction. *Hogan*, 971 F.3d at 218.

This Plaintiffs failed to do. We therefore conclude that they haven't demonstrated their standing to challenge the events restriction.


V.

For these reasons, we affirm the district court's grant of summary judgment to the County as to the parks restriction. But we vacate the grant of summary judgment as to the events restriction, and remand with instructions to dismiss Plaintiffs' claims challenging that restriction without prejudice.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED WITH INSTRUCTIONS*